P.1

Exhibit 1

Jordan Bates vs. Louisville Metro. ~~Police Dept.~~ Government, et al.

(II) Statement of Facts/Claims

① Plaintiff is currently a detainee at LMDC. Plaintiff has no violent criminal history whatsoever. He is currently 33 years old.

② In September 2021, Plaintiff was on probation arising from non-violent theft-related charges. On September 7, 2021, Plaintiff was late in checking in with his probation officer ~~and~~ by less than one week and a warrant was issued out of ~~Bullet~~ Jefferson County for Plaintiff's arrest.

③ On September 10, 2021, ~~Bullet County Police~~ Hillview Police Department ("~~BCPD~~" HPD) was seeking Plaintiff and indicated so on the radio/dispatch, which apparently was heard by LMPD. Although ~~BCPD~~ HPD did not request any help from LMPD, LMPD injected itself into this ~~none~~ non-emergent situation and voluntarily offered to send an officer with a canine to assist in apprehending Plaintiff. HPD ~~raws~~ voluntarily presumably accepted the volunteered assistance. ~~and~~ HPD ~~and LMPD~~ traced Plaintiff to the garage of Plaintiff's father (with whom Plaintiff resided at the time). HPD and LMPD knew he had no violent history or new charges.

④ ~~Plaintiff~~ Plaintiff was in the garage under some laundry/blankets. He was unarmed, having no gun, no knife, nor any other weapon or item that could be construed as a weapon.

⑤ Plaintiff's father gave HPD and LMPD permission to enter the garage to arrest Plaintiff.

⑥ Plaintiff did not resist arrest. Nor did HPD or LMPD advise Plaintiff that LMPD would send in a canine if Plaintiff did not come out from under the laundry (or, Plaintiff certainly did not hear it if they did and had no knowledge they were going to do so).

⑦ HPD and/or LMPD, without reasonable justification,* sent in the canine after Plaintiff, despite Plaintiff's father's permission to enter the garage. The canine violently latched on to Plaintiff's right forearm without provocation and stayed latched on, tearing at Plaintiff's flesh, even though Plaintiff was not resisting. Even worse, HPD/LMPD stood by Plaintiff while he was under the laundry and ~~him to~~ "patted" on show the canine where he was.

⑧ HPD and/or LMPD officers asked Plaintiff to come out with his hands up. Plaintiff tried to comply, but was limited to a crawl because the canine remained latched onto his right forearm and continued to gnaw through muscle and tendons. The best Plaintiff could do was attempt to crawl with his left hand raised, because HPD and/or LMPD officers were yelling at Plaintiff to "show us your hands."

⑨ Although Plaintiff was plainly not armed and plainly not a threat or resisting,

the HPD and/or LMPD officers intentionally prolonged Plaintiff's agony. With the canine still savaging Plaintiff's right forearm, they ordered Plaintiff to roll over on his stomach to be cuffed (apparently making a ~~joke~~ cruel joke between themselves). Only once they were about to cuff Plaintiff did LMPD call off the canine's attack on Plaintiff.

(10) Upon information and belief, the canine in question was and is known to be unreasonably aggressive by LMPD. The canine had recently caused severe lower leg injuries to a ~~a~~ third person before being unleashed on Plaintiff. Use of the canine was totally unwarranted.

(11) Once cuffed, HPD and/or LMPD officers knew that Plaintiff was seriously injured and took him immediately to Brooks Hospital in Brooks, Kentucky. There, the hospital staff x-rayed Plaintiff's arm (negative for a break/fracture), and knew the injuries were so severe as to require transport to the University of Louisville Hospital ("UofL") for more capable attention.

(12) At intake at UofL, medical professionals recognized Plaintiff's injuries as so severe that they had him sign a consent form immediately and rushed him to the front of the line and into surgery. ~~Along~~ Along the way, a ~~doctor~~ surgeon indicated to Plaintiff that he could lose his right arm if they did not act soon. Plaintiff was justifiably terrified and, on top of the excruciating physical pain, suffered severe mental, emotional and psychological anguish at the vicious, unprovoked attack and the prospect of losing his right arm. He was put under not knowing whether he would have an arm upon awakening.

(13) Plaintiff had to endure three separate surgeries over eleven days at UofL. After the first one, medical providers again indicated that Plaintiff could still lose his right arm, and Plaintiff was again put under anesthesia not knowing if he would awaken with an arm or not.

(14) Fortunately, the surgeons (believed to be with Weinert & Kutz) saved his arm after the second and third surgeries, but Plaintiff learned that the arm would never fully recover.

(15) As a result of these horrific incidents and surgeries, Plaintiff has a huge, hideous and permanent scar on the bottom of his right forearm from his wrist to his elbow, and on top of the right forearm approximately seven inches ~~~~ long. Plaintiff will have these scars the rest of his life. (Plaintiff will provide pictures of the scars by supplemental amendment to this Complaint).

(16) Plaintiff has substantial, life-long injuries to his muscles and tendons in his right arm.

(17) After eleven days and three surgeries, Plaintiff was transferred to ~~~~ BCDC. Before transfer, HPD officers told Plaintiff that the force used during his arrest was overkill and/or excessive.

P. 3

Exhibit 1

Jordan Bates v. Louisville Metro. Government, et al.

(18) Plaintiff was prescribed medications for his excruciating pain, which he could not take because he is in drug court and trying to recover from substance use disorder. Plaintiff had to endure the pain without these medications.

(19) Plaintiff was not provided any meaningful further medical attention or opportunities for physical/occupational rehabilitation. He had just one follow-up visit at UofL, about one month after discharge.

(20) Plaintiff's stitches were removed at BCDC. BCDC would not allow him any opportunities for physical/occupational rehabilitation and would not allow Plaintiff an elastic exercise band to strengthen his arm. Nor was Plaintiff provided any access to mental health services because of the traumatic event, which he needed.

(21) Plaintiff was detained at BCDC and LMDC for approximately eight months, during which time he was deprived of these essential medical services and at BCDC was detained in a cell with no window.

(22) Plaintiff will have physical limitations the rest of his life, and the horrific scars to prove it, along with severe physical, emotional, mental and psychological anguish.

(23) What was Plaintiff's charge relating to the incident? Fleeing on foot, a non-violent misdemeanor. HPD and/or LMPD therefore (literally) unleashed a savage canine on a peaceful suspect, who was unarmed, not resisting arrest and only at interest because of a brief probation violation, arising out of a non-violent charge. This is the definition of excessive force, unreasonable seizure, cruel and unusual punishment and other constitutional violations by Defendants, and yet another violation as found by the Department of Justice.

(24) Plaintiff was released from detention on or about April 23, 2022.

(25) Plaintiff is currently detained at LMDC on a non-violent drug court violation.

(26) At LMDC, Plaintiff has endured additional constitutional and other violations because:

(a.) He has been housed in overcrowded, unsanitary multi-person cells on the Fourth Floor of LMDC. His cell is only designed for 24 people, but has consistently housed over 32 people. Inmates have to sleep under tables, against a wall and otherwise on the floor. This overcrowding is causing unrest and there have been at least five fights in the last two months. This causes unsanitary conditions as well.

(b.) Plaintiff has only had an opportunity to leave the cell for recreation time on one occasion in the last two months, in violation of the LMDC and other standards requiring inmates to at least one hour outside the cell per day. This also affects hygiene, since this "gym time" is the only chance inmates get for barber and nail-trimming services.

(c.) LMDC does not allow Plaintiff and others to receive books, further affecting mental health and depriving Plaintiff of opportunities for education.

(d.) Plaintiff's cell has not had natural light, merely frosted, w tiny slits near the top of the cell in the rack area.

(e.) Plaintiff has not been able to get shampoo or deodorant.

(f.) Plaintiff has frequently found hair in his food, presenting health risks.

(g.) LMDC is understaffed. A news report from early March 2023 confirmed LMDC needs at least 80 more officers to be adequately staffed.

(27) Plaintiff suffers ongoing pain, discomfort and trouble sleeping due to the canine-related injuries and conditions at BCDC and LMDC.

(h) The towels and linens often are not clean. On April 5-6, 2023, a new, supposedly "clean" towel delivered to Plaintiff's cell had feces all over it and nearly all linens smelled awful. This was intentional or grossly negligent.

Causes of Action

Count I - Violations of Fourth, Eighth and Fourteenth Amendments by LMG, LMPD and HPD. BCG

(28) All allegations incorporated herein.

(29) The Fourth, Eighth and Fourteenth Amendments protect Plaintiff from excessive uses of force by law enforcement, unreasonable seizures, cruel and unusual punishment and entitle Plaintiff to equal protection of the law and due process.

(30) Defendants violated these rights by reason of the facts herein, including but not limited to absurd use of the canine.

(31) As a direct result of these wrongful acts, Plaintiff has suffered and will continue to suffer severe physical, mental, emotional and psychological anguish, monetary damages, lost wages, diminished earning capacity, and should be awarded punitive damages, injunctive relief and all reasonable attorneys' fees, costs and expenses.

Exhibit 17

Jordan Bates v. Louisville Metro Government, et al.

Count II - Violations of Fourth, Eighth and Fourteenth Amendments by LMDC/LMG

(32) All allegations incorporated herein.

(33) The Fourth, Eighth and Fourteenth Amendments protect Plaintiff from excessive force, unreasonable seizure, cruel and unusual punishment and entitle Plaintiff to equal protection of the law and due process.

(34) LMG and LMDC violated these rights by reason of the facts at Paragraph 26 herein.

(35) As a result, Plaintiff should obtain all relief identified in Paragraph 31.

Count III - Violations of Fourth, Eighth and Fourteenth Amendments by BCDC/BCG

(36) All allegations incorporated herein.

(37) The Fourth, Eighth and Fourteenth Amendments protect Plaintiff from unreasonable seizure, cruel and unusual punishment and entitle Plaintiff to equal protection of the law and due process.

(38) BCDC and BCG violated these rights by reason of the facts at Paragraphs 18-23 herein.

(39) As a direct result of these wrongful acts, Plaintiff should obtain all relief identified in Paragraph 31.

Count IV - Violations of the Kentucky Constitution by ~~BCG, LMPD, LCL et al. LMPD~~ All Defendants

(40) All allegations incorporated herein.

(41) Sections 1:1, 1:3, 1:4, 1:6, 2, 3, 10, 17 of the Kentucky Constitution entitle Plaintiff to rights similar to those identified in Counts I - III, herein.

(42) By reason of the facts herein, Defendants violated these rights. Section 14 of the Kentucky Constitution entitles Plaintiff to remedies for these violations.

(43) As a direct result of these wrongful acts, Plaintiff should be awarded all relief identified in Paragraph 31.

Count V - Breach of American Corrections Association ("ACA") Standards by
LMG/LMDC and __BCG__/BCDC

(44) All allegations incorporated herein.

(45) LMG/LMDC boasts in the Inmate Handbook ("IH") that it abides by the Standards of the ACA. See IH at p. 3 - Exhibit 2. These standards also apply to __BCG__/BCDC.

(46) By reason of the wrongful acts and/or omissions set forth in Paragraphs 18-26 herein, these Defendants have violated ACA Standards 1-CORE: 1A-02, 1A-04, 1A-07, 1A-08, 1A-09, 2A, 2A-01, 2A-02, 2A-06, 2A-08, 2A-09, 2A-10, 2A-12, 2A-15, 4A-03, 4A-04, 4A-05, 4A-06, 4B, 4B-01, 4B-02, 4B-03, 4C-12, 4C-13, 5A-01, 5C, 5C-01, 5C-02, 5C-04, 6A, 6A-06,

(47) As a direct result, Plaintiff should be awarded all relief identified in Paragraph 31.


Count VI - Breach of IH Contract by LMG/LMDC

(48) All allegations incorporated herein.

(49) The LMDC IH is a contract between LMG/LMDC and Plaintiff. The IH imposes reciprocal obligations on the parties as set forth in the IH. See, e.g. IH at p.3.

(50) In the IH, LMG/LMDC have represented that they have the following obligations:

(a.) "[LMG]" has a responsibility to the community for the safekeeping, care and custody of all inmates."

(b.) "[LMG] enhances public safety by controlling and managing offenders in a safe, humane... manner, consistent with sound correctional principles and constitutional standards." (Id. p. 4).

(c) LMG must "create and consistently enforce practice to ensure a safe and healthy environment in all our operations." (Id.).

(d.) LMG will comply with "501 KAR 3:140 Prisoner Rights." (Id at p. 9).

(e.) "Inmates are not subjected to personal abuse... personal injury, disease... or harassment." (Id. p. 15).

Exhibit 1

Jordan Bates v. Louisville Metro. Government

(F.) "[LMG] is committed to professionalism... The rights and dignity of every person are respected in a spirit of staff, management and inmate cooperation. [LMG] is committed to excellence, emphasizing accountability, diversity, integrity and professionalism." (Id., p. 3-4).

51 LMG/LMDC breached the IH by reason of the facts set forth in Paragraph 26.

52 As a direct result, Plaintiff has suffered and will continue to suffer severe physical, mental, emotional, and psychological anguish, monetary damages, and should be awarded punitive damages, injunctive relief and all reasonable attorneys' fees, costs and expenses.

Count VII - Breach of Implied Covenant of Good Faith/Fair Dealing by LMG/LMDC

53 All prior allegations set forth above are incorporated.

54 In the IH, the law implies and imposes a duty of good faith and fair dealing.

55 LMG/LMDC breached this duty by reason of the facts set forth in Paragraph 26.

56 As a direct result, Plaintiff has suffered should be awarded all relief identified in Paragraph 31.

Count VIII - Promissory/Equitable Estoppel (IH Contract)

57 All prior allegations incorporated.

58 In fairness and justice, LMG should be estopped from arguing that the IH does not constitute contractual or other obligations on LMG/LMDC. Inmates/Plaintiff must comply with the IH and so, too, must LMG/LMDC.

59 In equity, Plaintiff should be awarded the relief set forth in Paragraph 31 for LMG/LMDC's violations of the IH.

Count IX - Intentional Infliction of Emotional Distress (All Defendants)

60 All prior allegations incorporated.

61 Defendants' wrongful acts and/or omissions set forth herein were done knowingly and/or intentionally and designed to cause Plaintiff to suffer severe mental, emotional and psychological pain.

62 As a result, Plaintiff should be awarded all relief set forth in Paragraph 31.

p. 8

## Prayer for Relief

Wherefore, Plaintiff, Jordan Bates, respectfully requests the following relief:

① Judgment in his favor on all Counts/Causes of Action;

② Trial by jury;

③ Monetary damages of at least $3,000,000;

④ Punitive damages of at least $3,000,000;

⑤ Injunctive relief;

⑥ All reasonable attorney's fees, costs and expenses relating to this action; and

⑦ All other appropriate legal and equitable relief.